## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Marvin Baker, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | Case No. 3:23-cv-50028 |
| v. | ) | |
| | ) | Judge Iain D. Johnston |
| Warden, USP Tucson,[1] | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Marvin Baker has filed a habeas petition under 28 U.S.C. § 2241, seeking the restoration of good conduct time he lost as a result of a prison disciplinary proceeding. For the following reasons, his habeas petition [1] is denied.

### I. Background

During his time as an inmate at United States Penitentiary ("USP") McCreary, Baker was disciplined for fighting with another inmate. According to an incident report, on March 30, 2022, correctional officer Stephens observed Baker fighting with another inmate in his cell. Dkt. 17-1, Exhibit A, Attachment 2. Correctional officer Stephens ordered both inmates to stop fighting, but both inmates refused to obey the order. After correctional officer Stephens deployed OC spray twice, Baker and the

---

[1] Baker filed the instant petition when he was incarcerated at USP Thomson and properly named the Warden at that facility, Thomas Bergami, as Respondent. Dkt. 1. Baker has since been transferred to USP Tucson. Dkt. 14. Therefore, Thomas Bergami has been substituted for the current Warden at USP Tucson as the proper respondent with immediate control over the petitioner in accordance with *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) and *In re Hall*, 988 F.3d 376, 379 (7th Cir. 2021).

other inmate submitted to hand restraints. Both inmates were escorted to the shower to decontaminate and then to holding cells without further incident.

On March 30, 2022, the date of the incident, correctional officer Stephens completed an incident report charging Baker with a violation of Prohibited Act Code 201 (fighting with another person). Dkt. 17-1, Exhibit A, Attachment 2. On the same date, Baker was given a copy of the incident report. Baker told the investigating lieutenant that the allegation was untrue and that the camera in front of his cell would show that he and the other inmate were not fighting. Baker did not request any witnesses. After the FBI and AUSA declined to prosecute Baker, the incident report was released and processed on April 3, 2022.

Thereafter, Unit Discipline Committee ("UDC") chairman Keith conducted an initial review of the incident report. Dkt. 17-1, Exhibit A, Attachment 2. Baker did not make a statement to chairman Keith about the incident. Due to the seriousness of the offense, chairman Keith referred the incident report to the discipline hearing officer ("DHO"). On April 4, 2022, Baker was advised of the rights afforded to him at a hearing before the DHO. Dkt. 17-1, Exhibit A, Attachments 3–4. Baker identified that he wished to call witnesses at the disciplinary hearing, but he did not name any witnesses. Baker also requested a staff representative. Baker waived his right to be provided with a written copy of the charges at least 24 hours before the disciplinary hearing.

At the hearing conducted by the DHO on April 4, 2022, Baker was informed that his elected staff representative was unavailable. Dkt. 17-1, Exhibit A,

2

Attachment 5. As a result, Baker requested Unit Manager Clark as his staff representative and requested that Clark review video footage of the incident. Therefore, the DHO postponed the disciplinary hearing to allow Unit Manager Clark to review the video footage and meet with Baker.

At the reconvened disciplinary hearing on April 5, 2022, Unit Manager Clark reported to the DHO that he was not able to see a fight on the video because the camera view was pointed down range, not into the cell. Dkt. 17-1, Exhibit A, Attachment 5. The DHO asked Baker if he was requesting anything else from Unit Manager Clark, and Baker said "No." *Id.* Baker then alleged staff misconduct, arguing that the correctional officer used excessive force by spraying him even though he and the other inmate were not fighting. As a result, the DHO suspended the hearing until the appropriate investigatory official gave permission to continue, which occurred on April 21, 2022.

The DHO reconvened the disciplinary hearing on April 28, 2022. Dkt. 17-1, Exhibit A, Attachment 5. Unit Manager Clark was not asked to return for the hearing because Baker had previously stated he had no other requests for Clark. Dkt. 17-1, Exhibit A ¶ 19. During the hearing, Baker did not request anything further from Unit Manager Clark or to have him present at the hearing. *Id.* Baker did not identify or request to call any witnesses during the hearing. At the disciplinary hearing, Baker stated that he understood his rights and made a statement in his defense. Dkt. 17-1, Exhibit A, Attachment 5. Baker stated that he was sprayed for no reason and that he was not guilty of the offense.

The DHO found that Baker committed the prohibited act of fighting with another person. Dkt. 17-1, Exhibit A, Attachment 5. The DHO relied on the incident report, staff memorandums, written statements of witnesses, and Baker's own statements in finding that the greater weight of the evidence showed that Baker committed the prohibited act. Specifically, the DHO found that Baker's denial did not outweigh correctional officer Stephens' written statement of the incident. The DHO noted that other than Baker's statement, Baker provided no evidence that undermined correctional officer Stephens' statement or that the statement was fabricated. Baker was sanctioned with a disallowance of 27 days of good conduct time and a loss of email privileges for 3 months. The DHO report was delivered to Baker on May 17, 2022.

Baker submitted an appeal regarding the DHO report to the Bureau of Prisons ("BOP") Regional Office, which was received on August 19, 2022. Dkt. 17-2, Exhibit B ¶ 9. The appeal was rejected because it was submitted untimely and to the wrong region. *Id.* Baker was instructed to submit his appeal to the region in which he was then housed. *Id.* Baker also submitted an appeal to the BOP Central Office, which was received on October 11, 2022. Dkt. 17-2, Exhibit B ¶ 10. The appeal was rejected because Baker had been instructed previously to submit the appeal to the proper regional office. *Id.* Baker was instructed to file his appeal in the North Central Regional Office before submission to the central office level. *Id.* Baker also appealed to the North Central Regional Office, which was received on September 19, 2022. Dkt. 17-2, Exhibit B ¶ 11. The appeal was rejected because Baker did not include a copy

4

of the DHO report as required. *Id.* Baker was given 10 days to refile his appeal. *Id.* Baker did not refile his appeal as instructed, and BOP records reveal that Baker has not filed any further appeals regarding the DHO report as of June 14, 2023. Dkt. 17-2, Exhibit B ¶ 12; Dkt. 17 at 4.

In January 2023, Baker filed the instant habeas petition under 28 U.S.C. § 2241. Dkt. 1. Baker alleges that his right to due process was violated during the disciplinary proceedings because: (1) he was not provided a staff representative at his hearing; and (2) UDC chairman Keith reviewed the incident report by himself and conducted the UDC hearing at Baker's cell with other inmates nearby that could hear the discussion. Dkt. 1. Upon receiving Baker's petition, the Court ordered briefing. The petition is now fully briefed. Dkts. 17, 23.

## II. Analysis

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011); *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision

maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; and (4) receives a written statement of the evidence relied on and the reason for the decision. *Jones*, 637 F.3d at 845; *Wolff*, 418 U.S. at 565–66.

The disciplinary decision will be upheld as long as it is supported by "some evidence," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("[O]nce the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 456; *see also Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (finding that a court can overturn a disciplinary decision "only if no reasonable adjudicator could have found [the petitioner] guilty of the offense on the basis of the evidence presented").

A federal prisoner must exhaust their federal administrative remedies before seeking habeas relief in court. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("A common-law exhaustion rule applies to § 2241 actions even though § 1997e(a) does not."). Proper exhaustion requires compliance with the BOP's Administrative Remedy Program, which is set out at 28 C.F.R. §§ 542.10–542.19. *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the course of its proceedings."). Under the program, a prisoner challenging the decision of the DHO must submit an appeal initially to the Regional Director for the region where the prisoner is currently located. 28 C.F.R. § 542.14(d)(2). The appeal must be "accompanied by one complete copy or duplicate original of the institution Request and response" and submitted within 20 calendar days of the date the Warden signed the response. *Id.* § 542.15(b). If the prisoner is not satisfied with the Regional Director's response, they may submit a final appeal to the General Counsel in Washington, D.C. *Id.* § 542.15(a), (b).

## A. Failure to Exhaust

Respondent argues that Baker failed to exhaust his administrative remedies before filing his petition because he did not properly appeal to the Regional Director. Specifically, Baker initially appealed to the wrong regional office and then when he filed an appeal with the correct regional office, he did not include a copy of the DHO report as required. Baker was then given 10 days to refile a proper appeal, but Respondent argues that he failed to do so.

Baker does not respond to the argument that he failed to exhaust his administrative remedies, and nothing in the record presented to the Court reveals that he properly exhausted his claims. Baker states only that he "used all of his Administrative Remedies," noting that he appealed both to the Regional Director and to the Central Office. Dkt. 1 at 2. However, Baker admits that his first appeal to the Regional Director was rejected because it was not submitted to the proper regional

7

office. Baker also admits that his appeal to the Central Office was similarly rejected because he was already instructed to submit his appeal to the proper regional office. Baker makes no mention of the appeal he submitted to the proper regional office or that it was rejected because he failed to attach the DHO report as required. Baker does not argue and there is no evidence that he resubmitted a proper appeal by attaching the DHO report as instructed. Baker was instructed on how to correct the defects in each of his appeals, but he continually failed to file his appeals properly through the BOP's Administrative Remedy Program.

Accordingly, Baker failed to exhaust his administrative remedies before filing the instant petition. However, as detailed below, even if Baker had exhausted his administrative remedies, his claims would still fail on the merits.

**B. Denial of Due Process**

Baker first argues that he was denied due process because he was not provided with a staff representative at his disciplinary hearing. Specifically, Baker argues that although the DHO report states that Unit Manager Clark was appointed as his staff representative, Clark was not present at his first or second hearing. Accordingly, Baker accuses correctional officer Stephens of "lying by omission" in his declaration when he stated that Unit Manager Clark made a statement to the DHO at the disciplinary hearing. Dkt. 23 at 2. Additionally, in his reply brief, Baker also states that Unit Manager Clark told him he would not be his staff representative because he would not "go against his staff for an inmate." Dkt. 23 at 1.

As Respondent points out, the evidence establishes that Baker was provided with a staff representative, namely Unit Manager Clark. The DHO even postponed the disciplinary hearing to allow Unit Manager Clark to meet with Baker and review the video footage of the incident as Baker requested. The DHO report shows that Unit Manager Clark reported his findings to the DHO at the first hearing and that Baker had no further requests for Clark. It is undisputed that Unit Manager Clark did not attend Baker's second disciplinary hearing, but Baker does not argue that he asked the DHO for his staff representative to be present or for his hearing to be postponed for his staff representative to appear. Instead, the DHO stated that during the second hearing, Baker did not request to have Unit Manager Clark present at the hearing or request anything further from him. Dkt. 17-1, Exhibit A ¶ 19.

Even assuming Baker asked for Unit Manager Clark to be present at his hearing, his claim for relief still fails. There is no constitutional due process right to a staff representative. "[D]ue process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved … or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570); *see also Martin v. Zatecky*, 749 F. App'x 463, 466 (7th Cir. 2019) (unpublished).

Here, Baker does not argue, and there is no evidence to support, that he is illiterate or that the charge was too complex for him to proceed with his disciplinary hearing. Accordingly, like the petitioner in *Wolff*, Baker is not "within the class of

9

inmates entitled to advice or help from others in the course of a prison disciplinary hearing." *Wolff*, 418 U.S. at 570; *see also Duarte v. Turner*, 46 F.3d 1133 (7th Cir. 1995) (dismissing claim that BOP staff representative was ineffective because petitioner was not constitutionally entitled to the aid of a staff representative). Accordingly, Baker has not identified any violation of his due process rights relating to his right to a staff representative.

Next, Baker argues that his rights were violated when UDC chairman Keith reviewed the incident report by himself because the inmate handbook states that the UDC is "a body" that hears disciplinary infractions. Dkt. 1 at 5. Baker also takes issue with chairman Keith conducting the UDC hearing at his cell with other inmates nearby that could hear the discussion.

As Baker points out, the UDC ordinarily consists of two or more staff that perform an initial review of the incident report. Dkt. 17-1, Exhibit A, Attachment 1 at 24; 28 C.F.R. § 541.7(b). However, the BOP's policy requires only one UDC staff member to perform an initial review when the incident report is required by policy to be referred to the DHO. Dkt. 17-1, Exhibit A, Attachment 1 at 24.

Here, Baker was charged with a violation of Prohibited Act Code 201 for fighting with another person, which is a high severity level offense. Dkt. 17-1, Exhibit A, Attachment 1 at 10, 47. Under the BOP's Inmate Discipline Program, the UDC automatically refers all high severity level charges to the DHO for further review. *Id.* at 10, 24; 28 C.F.R. § 541.7(a)(4). Consistent with the Inmate Discipline Program, Baker's incident report was automatically referred to the DHO. Accordingly, UDC

chairman Keith's review of the incident report was in accordance with the BOP's policy.

Even assuming UDC chairman Keith's review of the incident report was in violation of the BOP's policy, a violation of prison policy does not establish a constitutional violation. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (unpublished) (rejecting challenges to prison disciplinary proceeding because "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir. 1986) ("[T]he violation of an administrative rule is not the same thing as the violation of the Constitution.").

Baker also takes issue with his UDC hearing being conducted in the hallway. However, Baker has not identified any right he was denied because of his UDC hearing, which as Respondent points out was only a conduit for the automatic referral to the DHO. Therefore, Baker has not established any denial of his due process rights stemming from the UDC hearing.

Baker had an opportunity to explain his side of the story to the DHO as required by *Wolff*. The DHO weighed the evidence and credited the correctional officer's statement in the incident report over Baker's denial. When evaluating whether the disciplinary decision is supported by "some evidence" in the record, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56. The

11

incident report "alone" can "provide[ ] 'some evidence' for the [DHO's] decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *Chambers v. Ciolli*, 19 F.4th 984, 986 (7th Cir. 2021) ("[T]he district court was right that the incident reports sufficed to clear that low bar."). Accordingly, "some evidence" supports the DHO's disciplinary decision, which is all that due process requires. *Scruggs*, 485 F.3d at 941; *see also Hill*, 472 U.S. at 457 ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board."). Therefore, Baker has not established that his due process rights were violated during the disciplinary proceedings.

### III. Conclusion

For the reasons stated above, Baker's petition [1] is denied. Baker is advised that this is a final decision ending his case in this court. If Baker wants to appeal, he must file a notice of appeal with this court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(B)(iii). Baker need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Baker wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion

suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Date: May 14, 2025                                  By:
                                                          Iain D. Johnston
                                                          United States District Judge

13